

*1046974685*

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| RANDY RAINS AND JOHNA RAINS, husband and wife, | ) ) ) |
| Plaintiffs, | ) **CJ-2020-02005** ) Case No. |
| vs. | ) Judge **REBECCA NIGHTINGALE** ) |
| CSAA FIRE AND CASUALTY INSURANCE COMPANY, d/b/a AAA INSURANCE COMPANY, a foreign insurance company; CSAA INSURANCE EXCHANGE, an interinsurance exchange; and CORD CHARVAT, an Individual, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DISTRICT COURT**
**F I L E D**
JUN 2 5 2020
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### PETITION

**COMES NOW**, the Plaintiffs, Randy and Johna Rains ("Plaintiffs"), by and through their attorneys of record Gibbs Armstrong & Borochoff P.C. and The Barron Law Firm, LLC, and for their claim for relief against the above-named Defendants, allege and states as follows:

### JURISDICTION AND VENUE

1.  Plaintiffs Randy and Johna Rains are citizens and residents of Tulsa County State of Oklahoma. The property owned by Plaintiffs is located in Jenks, Oklahoma in Tulsa County, Oklahoma.

2.  Defendant Cord Charvat ("Chavrat") is the owner and operator of a AAA Insurance Agency and is a resident of Tulsa County, State of Oklahoma.

3.  Defendant CSAA Fire and Casualty Insurance Company, d/b/a AAA Insurance Company ("AAA") is a foreign insurer licensed to do business in the State of Oklahoma and has one or more agents located in Tulsa County, State of Oklahoma.

1



EXHIBIT 2

4.      CSAA Insurance Exchange (hereinafter referred to as "CSAA") is an interinsurance exchange organized under the Insurance Code of California. CSAA is an unincorporated association made up of its insureds who are also known as subscribers. CSAA subscribers exchange the insurance contracts with each other. CSAA is not incorporated and has no stock, all operating funds consist of premiums paid by the subscribers of its subsidiaries.

5.      Defendants AAA and CSAA Insurance Exchange are part of reciprocal inter-insurance exchange, in which they pool their business among other insureds and "exchange policies" within the CSAA Insurance Group of companies and share all premiums, expenses and losses. By and through this inter-insurance exchange, Defendant CSAA Insurance Exchange directly or through its subsidiaries, issues policies, collects premiums, pays commissions to agents, and handles every aspect of the AAA bodily injury claims handling. Defendant AAA is a wholly owned subsidiary of CSAA Insurance Exchange. The latest Examination Report on CSAA by the California Department of Insurance explained CSAA's role as the insurer:

> Effective January 1, 2011, the [CSAA] entered into a Reinsurance Pooling Agreement (Agreement) with five of its subsidiaries: CSAA General Insurance Company, CSAA Fire & Casualty Insurance Company, CSAA Affinity Insurance Company, CSAA Mid-Atlantic Insurance Company, and CSAA Mid-Atlantic Insurance Company of New Jersey. *Pursuant to the Agreement, [CSAA] is the lead insurer and each company cedes 100% of its premiums written, unearned premiums, losses, loss reserves and loss adjustment expenses, incurred, policy fees, installment fees, other ancillary income items, and other underwriting expenses incurred to [CSAA].*

*Report of Examination of the CSAA Insurance Exchange as of December 31, 2015, Filed on May 11, 2017*. (emphasis added). According to the Agreement between CSAA and AAA, CSAA is the insurer or one of the insurers.

2

6. Defendant CSAA's Rules and Regulations further explain its role as an insurer. The Rules and Regulations of CSAA Insurance Exchange, as amended January 1, 2018, state:

> [CSAA] shall have powers equivalent to those of a corporation engaged in the business of insurance to the fullest extent permitted by applicable law. Without limitation, [CSAA] may engage employees, including officers, enter into any lawful contract, maintain bank accounts, hold and invest assets in accordance with applicable law, establish reserves, maintain books and records, own real and personal property, organize or acquire and own, subsidiary entities and undertake the specific activities enumerated elsewhere herein.

*Rules and Regulations of CSAA Insurance Exchange, as amended January 1, 2018.*

7. Oklahoma's Insurance Code Okla. Stat. tit. 36 § 3615, incorporates the constituent documents, like the Rules and Regulations of CSAA, of a reciprocal insurer into the policy of insurance.

8. CSAA is organized under the State law of California. California law deems the insurance exchange as one of the insurers of an insured's policy:

> The organization under which such subscribers so exchange contracts is termed a reciprocal or interinsurance exchange and shall be deemed the insurer while each subscriber shall be deemed an insured.

*Ca. Ins. Code,* Art. 2 § 1303.

9. Upon information and belief, CSAA is directly involved in adjusting claims because CSAA employees hold primary responsibility for handling claims by insureds.

10. CSAA Insurance Exchange is deemed a citizen of all states where its subscribers reside. Since CSAA subscribers live in Oklahoma, CSAA is a citizen of Oklahoma.

11. Defendant Cord Charvat is a resident and citizen of the State of Oklahoma. Plaintiffs purchased their homeowners' replacement cost policy of insurance through the offices of the AAA Defendants' agent, Cord Charvat.

3

12. Jurisdiction is afforded to this Court pursuant to Okla. Stat. tit. 12 § 2004(F) and Okla. Const. Art. VII, §7.

13. Venue is proper in Tulsa County pursuant to Okla. Stat. tit. 12 §§ 137, 141.

## FACTUAL BACKGROUND

14. Plaintiffs purchased their home, new, in 2006. Prior to purchase, a home inspection report reflected that the home was in excellent condition, no repairs were necessary to the roof, or shingles.

15. In April of 2016, Plaintiffs switched their insurance company and contacted Cord Charvat, AAA's insurance agent, to obtain homeowner's replacement coverage for their home.

16. Plaintiffs went to Cord Charvet and requested a replacement policy which would provide coverage for the home in the event of storm, hail or wind damage.

17. Plaintiffs' insurance agent, Cord Charvet, assured them that AAA's policy provided excellent coverage. He assured them that it would save them a ton of money over AAA's nearest competitors, by placing their home insurance with AAA. He said it was a great deal, great company, great policy, and great coverage.

18. Chavrat assured Plaintiffs that AAA could beat any other insurance company's rates and provide them with the best coverage and policy available for the money; however, Mr. Chavrat, interjected, it is important that he perform an inspection of the house before he could write the coverage.

19. Chavrat inspected the roof and declared that the roof was in excellent condition and he advised AAA that the home met all underwriting requirements and AAA would write Plaintiffs policy.

20. At no time, did Chavrat or AAA advise Plaintiffs that their roof needed to be replaced or repaired. AAA accepted Plaintiffs' check for the premium, yet never advised Plaintiffs or Mr. Chavrat's agency that there was wear, tear, and deterioration to the roof.

21. On or about June 15, 2018, Plaintiffs' home was damaged by hail and wind.

22. On July 24, 2018, Plaintiffs notified AAA that their roof was damaged as a result of the hail and windstorm.

23. Initially, both AAA's agent, Chavrat, and the adjuster, told Plaintiffs that there was no problem and the damage would be covered.

## COUNT I: BREACH OF CONTRACT

24. Plaintiffs fully incorporate into this count each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendants, AAA, CSAA, and Chavrat, allege as follows:

25. Plaintiffs entered into a contract of insurance with AAA and CSAA to provide homeowners' insurance for their dwelling in 2016.

26. Plaintiffs' homeowners' replacement cost policy with AAA was in full force and effect at all material times hereto.

27. Plaintiffs provided proper and timely notice to AAA, CSAA, and Chavrat, of their claims arising from wind, storm, and hail, which occurred to the home following the storm of July 2017.

28. Plaintiffs have, in all material respect, complied with the terms and conditions of the policy. They allowed their home to be inspected, answered all the questions posed to them by the agent, they faithfully paid their policy premiums, and their home was inspected.

29. AAA and CSAA breached their contractual obligations under the terms and conditions of the insurance contract with Plaintiffs by failing to provide coverage and to pay Plaintiffs all benefits to which they are entitled under the terms and conditions of the policy.

30. As a result of Defendant's breach of contract and other wrongful conduct, Plaintiffs have sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of attorneys' fees, costs and interests.

## COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

31. Plaintiffs fully incorporate into this count each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendants hereby allege as follows:

32. AAA Defendants had a duty to deal fairly and in good faith with Plaintiffs.

33. AAA Defendants breached their duty to deal fairly and in good faith by engaging in the following acts and omissions:

    a. Failing to perform a proper investigation in regard to Plaintiffs' claims made under their homeowners' policy;

    b. Failing to pay the full and fair amount for the property damage sustained by Plaintiffs from the malfunctioning fireplace ventilation system which occurred in October of 2018, in accordance with the terms and conditions of their insurance policy;

    c. Refusing, without proper cause, to pay Plaintiffs all benefits they are owed under the insurance contract and pursuant to Oklahoma law;

    d. Purposefully, wrongfully and repeatedly withholding pertinent benefits, coverages and other provisions due to Plaintiffs under the terms and conditions of their

insurance policy in violation of Unfair Claims Settlement Practices Act, 36 O.S. §§ 1250.1-1250.16;

  e. Purposefully, wrongfully and repeatedly failing to communicate all coverages and benefits applicable to Plaintiffs' claim;

  f. Forcing Plaintiffs to retain counsel to recover insurance benefits to which they are entitled under the terms and conditions of the insurance contract;

  g. Failing to perform a fair and objective investigation of Plaintiffs' damages;

  h. Knowingly and intentionally failing to engage in proper claims handling practices and failing to compensate its insureds for losses under their homeowners' policy;

  i. Engaging in outcome-oriented investigation and claim handling practices;

  j. Engaging in these improper claims' practices knowing that its insureds would suffer financial harm;

  k. Putting its interest in maximizing financial gains and limiting disbursements above the interests of Plaintiffs;

  l. Engaging in sham insurance evaluating and adjusting in order to minimize the amount of damages to less than what would make Plaintiffs whole;

34. The conduct of Defendants, as described above, constitutes bad faith, fraud, and is a material breach of the terms and conditions of the insurance contract between the parties. AAA Defendants had no reasonable basis in its refusal to recognize and pay Plaintiffs all benefits due under the policy for damages caused by covered perils.

35. As a consequence of Defendant's breach of the duty of good faith and fair dealing, Plaintiffs have sustained damages, including deprivation of monies rightfully belonging to them,

anger, stress, worry, physical and emotional suffering, health risks, mental pain and anguish, attorneys' fees and litigation costs.

36. The conduct of Defendants was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

37. The actions of Defendants during the handling of Plaintiffs' claim demonstrates its callousness, intentionality and malice toward Plaintiffs in breaching their duty to deal fairly and in good faith with the Plaintiffs. The actions of Defendants were intentional, malicious, and consistent with an overall collective corporate goal of increasing profits through the systematic reduction or avoidance of claims. Plaintiffs therefore seek punitive damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

### COUNT III: NEGLIGENCT PROCUREMENT OF INSURANCE

38. Plaintiffs fully incorporate into this count each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendants, AAA, CSAA, and Cord Charvat, and hereby allege as follows:

39. Plaintiffs hired Chavrat as their primary insurance agent for their home insurance needs. At all times relevant hereto, Chavrat was an agent and/or ostensible agent of AAA. Chavrat owed Plaintiffs a duty to act in good faith and to exercise reasonable care, skill and diligence in the procurement of insurance for Plaintiffs.

40. Chavrat had a duty to accurately inform Plaintiffs of all coverages, benefits, limitations, exclusions, and, if, AAA had a routine practice of not fulfilling their obligations under the insurance contract, to advise Plaintiffs before they paid their premium dollars.

41. Chavrat made material misrepresentations and induced the Plaintiffs' to buy insurance with AAA, leading them to believe that they bought the best insurance they could get

for the money, the best coverage they could get for their premium dollar, and that AAA would save them a ton of money and provide them great coverage for their home.

42. Chavrat had a duty to procure the coverage that was actually requested by Plaintiffs and promised by AAA after AAA and Chavrat's inspection of Plaintiffs' home and roof. If Plaintiff's roof was in need of repair or replacement or had deteriorated to such a point that AAA would not insure it in the case of wind and hail damage, then Chavrat and AAA had a duty to warn the Plaintiffs that there would be no coverage for their roof in the event of a wind or hail storm, and not induce the Plaintiffs to believe that they indeed had coverage. When, in fact, AAA made up their mind to deny coverage before ever visiting Plaintiffs' home.

43. Chavrat was the first line of underwriting for AAA and was required to conduct an inspection of the property. Among other things, Chavrat was to independently verify the condition of the property, accurately take measurements of the roof and dwelling and obtain information pertaining the amenities and construction quality of the dwelling and interior and the age and condition of the roof. Chavrat represented there were no preexisting issues with the roof that would limit or restrict coverage in the event of either a partial or total loss and the policy he renewed and procured for Plaintiffs was for full replacement, that in the event of damages or loss to their home or furnishings, said damages and losses would be fully paid, and the property would be restored back to its pre-loss condition in the event of a loss.

44. In the event there was evidence of wear/tear, defects, deterioration, or inadequate workmanship at the time of Chavrat's inspection, Chavrat had a duty to report the same to Plaintiffs and AAA and CSAA. However, at no relevant time, did Chavrat, AAA or CSAA ever advise Plaintiffs that their home had any wear or tear, deterioration, or pre-existing damage that did not meet any of the underwriting guidelines of AAA and CSAA.

45. Chavrat independently established, calculated, and set the replacement cost policy limits for the insurance contract. Chavrat recommended and represented to Plaintiffs that they could insure their home for one hundred percent (100%) of its replacement cost value as determined by Chavrat, utilizing AAA and CSAA's valuation software.

46. Chavrat asked general questions about the dwelling, and other than answering the questions that were asked, Plaintiffs had no other input into the amount of coverage independently selected and calculated by Chavrat.

47. Chavrat had a duty to procure the coverage that he promised to Plaintiffs, and represented that they would get, which included replacement cost coverage subject to no exclusions.

48. Chavrat breached his duty owed to Plaintiffs and is liable to Plaintiffs because through the fault of Chavrat, the insurance requested by Plaintiffs was not procured as promised and Plaintiffs have suffered significant financial losses due to the wrongful conduct of AAA and CSAA and their agent, Chavrat.

49. Subsequent to the first year of coverage, AAA and CSAA arbitrarily, and without warning to the Plaintiffs, raised the premium and changed their roof from a full replacement policy to an actual cash value policy.

50. Plaintiff's relied on the above referenced representation of Cord Chavrat in purchasing and renewing their policy of insurance with AAA and CSAA. Plaintiffs were induced to accept and purchase AAA and CSAA's homeowner's insurance policy by Chavrat's misrepresentations and constructive fraud.

51. Even when AAA and CSAA converted their policy from a replacement policy to an actual cash value, Chavrat assured them that they were still covered.

Chavrat is the agent and/or ostensible agent of AAA and CSAA, and AAA and CSAA is vicariously liable for the conduct of Chavrat.

52.     The conduct of Defendants was intentional, willful, malicious and in reckless disregard of the rights of the Plaintiffs and is sufficiently egregious in nature as to warrant the imposition of punitive damages to deter such wrongful conduct.

53.     As a result of Chavrat's conduct, Plaintiffs have sustained financial losses, mental and emotional distress, and have been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of attorney's fees, costs, and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff prays for judgment in their favor and against Defendants, CSAA, AAA, and Cord Charvat for:

(a)     Actual and punitive damages each in an amount in excess of $75,000.00;

(b)     Disgorgement of the increased financial benefits derived by any and/or all of the Defendants as a direct result of the Defendants' wrongful conduct; and

(c)     Prejudgment interests, costs and attorneys' fees.

Respectfully submitted,

**GIBBS ARMSTRONG BOROCHOFF, P.C.**

_____
George Gibbs, OBA #11843
601 South Boulder Avenue, Suite 500
Tulsa, Oklahoma 74119
918-587-3939  Telephone
918-582-5504  Facsimile
918-582-5505
ggibbs@gablawyers.com
**ATTORNEYS FOR PLAINTIFFS**

and

Bradford D. Barron, OBA #17571
THE BARRON LAW FIRM, PLLC
PO Box 369
Claremore, Oklahoma 74018
918-341-8402 Telephone
918-515-4691 Facsimile
bbarron@barronlawfirmok.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**