UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RANDY RAINS and JOHNA RAINS,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**CSAA FIRE AND CASUALTY INSURANCE** )<br>**COMPANY, d/b/a AAA INSURANCE** )<br>**COMPANY, a foreign insurance company;** )<br>**and CSAA INSURANCE EXCHANGE, an** )<br>**interinsurance exchange; and** )<br>**CORD CHARVAT, an individual,** )<br>)<br>**Defendants.** ) | Case No. 20-CV-0400-CVE-FHM |

## OPINION AND ORDER

This matter comes before the Court for consideration of the notice of removal (Dkt. # 2) filed by defendant CSAA Fire & Casualty Insurance Company ("FCIC").

Plaintiffs, Randy and Johna Rains, filed an action in the District Court of Tulsa County, Oklahoma, on June 25, 2020, regarding the underpayment of insurance benefits. Plaintiffs named three defendants in the complaint: their insurance company (FCIC), the interinsurance exchange (CSAA Insurance Exchange ("exchange")), and the agent who procured their insurance (Cord Charvat ("Charvat")). Dkt. # 2-2. Plaintiffs asserted claims against FCIC and the exchange for breach of contract and for breach of the duty of good faith and fair dealing. Dkt. #2-2, at 5-8. Plaintiffs also asserted a claim against Charvat for negligent procurement of their insurance contract. Dkt. #2-2, at 8-11. Plaintiffs assert they are owed damages in excess of $75,000. Dkt. # 2-2, at 11. Plaintiffs also seek additional punitive damages.

On August 12, 2020, FCIC removed the action to this Court pursuant to 28 U.S.C. § 1441(a). Section 1441(a) states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). FCIC asserts that removal is proper because this Court has original jurisdiction under 28 U.S.C. § 1332.

Plaintiffs have filed a motion to remand(Dkt. # 16). Plaintiffs argue that the parties are not diverse under § 1332 because at least one defendant is, like them, a resident of Oklahoma for the purposes of diversity jurisdiction. Plaintiffs also request fees and costs, alleging that the removal is wrong as a matter of law. FCIC responds (Dkt. # 25) that there is complete diversity when considering only the properly joined parties. FCIC argues that the citizenship of defendant Charvat, the insurance agent, should be disregarded as he was not properly joined as a party prior to removal. FCIC also argues that the exchange does not qualify as a citizen of Oklahoma. FCIC asserts that, in any event, the citizenship of both Charvat and the exchange should be disregarded because they are fraudulently joined. Finally, FCIC argues that fees and costs should not be awarded to plaintiffs because removal was proper. The motion is fully briefed (Dkt. ## 16, 25, 30).

I.

The following allegations are taken from the petition in the underlying action: in 2006, plaintiffs purchased a new home in Jenks, Oklahoma. Dkt. # 2-2, at 1, 4. Prior to purchasing the home, plaintiffs received a home inspection report that indicated that the home was in excellent condition and no repairs were necessary. Id. at 4. In April 2016, plaintiffs contacted defendant Charvat, FCIC's insurance agent, to procure insurance coverage on their house. Id. Plaintiffs

requested replacement coverage for damage caused by storms, hail, and wind. Id. Charvat asserted he could procure such coverage, but stated that he would need to perform an inspection of the house first. Id. Charvat inspected the roof and declared it to be in excellent condition. Id. As a result, Charvat represented that he could insure plaintiffs' home for its entire replacement cost. Id. at 9. Charvat "independently established, calculated, and set the replacement cost policy limits." Id. at 10. Charvat determined the policy coverage using FCIC valuation software. Id. Plaintiffs had no other input in determining policy limits other than answering Charvat's questions. Id.

Charvat advised FCIC that the home met the underwriting requirements and procured plaintiffs' policy. Id. at 4. FCIC accepted plaintiffs' check for the premium. Id. at 5. At no point did Charvat or FCIC state that there were issues with the roof that would affect coverage. Id. Approximately one year after plaintiffs procured the policy, plaintiffs' insurers "without warning to the [p]laintiffs, raised the premium and changed their roof from a full replacement policy to an actual cash value policy." Id. at 10.

In June 2018, plaintiffs' home suffered hail and wind damage. Id. at 5. Plaintiffs notified FCIC that the house had sustained damage due to hail and wind and was told by both Charvat and the adjuster that the damage would be covered. Id. Plaintiffs' replacement cost policy was in effect at all material times. Id. However, plaintiffs state that the contract was breached when FCIC failed to pay plaintiffs the full amount owed to them under the insurance policy (i.e. the replacement cost). Id. at 6.

Plaintiffs filed an action in state court against FCIC, the exchange, and Charvat on June 25, 2020. Plaintiffs seek relief from FCIC and the exchange for breach of contract, and for breach of the duty of good faith and fair dealing. Plaintiffs also brought a claim against Charvat for negligent

3

procurement of an insurance contract. Dkt. #2-2, at 5-11. FCIC removed this action on August 12, 2020, on the basis of diversity jurisdiction. Dkt. # 2. At that time, Charvat had not yet been served in state court. Dkt. ## 2, at 3; 16, at 5. He has since been served. Dkt. # 16, at 5.

## II.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005). The party invoking federal jurisdiction has the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case."); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). "The Court resolves doubtful cases in favor of remand." McDonald v. CSAA Ins. Exch., 2017 WL 887108, at *2 (W.D. Okla. Mar. 6, 2017) (citing Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982)).

A defendant may remove a case to federal court if the case is one over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of

different states." The Supreme Court has construed § 1332 to require complete diversity, and the "plaintiff must meet the requirements of the diversity statute for *each* defendant . . . ." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989).

## III.

The parties dispute four main jurisdictional issues.: (i) whether Charvat's citizenship should be considered because he had not been properly served at the time of removal under 28 U.S.C. § 1441(b) and, if it is considered; (ii) whether he has been fraudulently joined; (iii) whether the exchange qualifies as a citizen of Oklahoma for the purposes of determining diversity jurisdiction, and, if it does; (iv) whether the exchange is fraudulently joined. Because the Court finds Charvat is properly joined, the Court remands this action to state court based on the absence of complete diversity and does not reach the issues relating to the exchange.

### A. Diversity Jurisdiction

For the purposes of diversity jurisdiction, it is uncontested that plaintiffs are citizens and residents of Tulsa County, Oklahoma. Dkt. ## 2-2, at 1; 2, at 2. FCIC asserts it is an Indiana corporation with its principal place of business in California. Dkt. # 2, at 3. Plaintiffs assert that Charvat is an individual domiciled in Oklahoma. Dkt. # 2-2, at 1. Charvat's summons in the state court action lists an Oklahoma address. Dkt. #22-1, at 1. Instead of challenging that Charvat is a resident of Oklahoma, FCIC argues that Charvat's citizenship is irrelevant. Dkt. #2, at 3. FCIC asserts that the plain language of 28 U.S.C. § 1441(b)(2) dictates that a case may be removed if all parties "properly joined and served" in a state court action are diverse under § 1332. FCIC argues that because Charvat had not yet been properly served at the time of removal his citizenship is not

considered when assessing removal under 28 U.S.C. § 1441(b)(2). FCIC is mistaken. Section 1441(b)(2) does not apply to this action.

Under 28 U.S.C. § 1441(b)(2), "[a] civil action <u>otherwise removable</u> solely on the basis of the jurisdiction under section 1332(a) of this title" may not be removed if any defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). The plain text dictates that for § 1441(b)(2) to apply the civil action must, at minimum, be "otherwise removable" on the basis of diversity jurisdiction. To determine "whether a party has adequately presented facts sufficient to establish diversity jurisdiction" courts "examine the face of the complaint." <u>Gaines v. Ski Apache</u>, 8 F.3d 726, 729 (10th Cir. 1993); <u>see also</u> <u>Hunter Douglas Inc. v. Sheet Metal Workers Intern. Ass'n, Local 159</u>, 714 F.2d 342 (4th Cir. 1983) ("Diversity jurisdiction is determined by the face of the complaint, not by which defendants have been served."); <u>Clarence E. Morris, Inc. v. Vitek</u>, 412 F.2d 1174, 1176 (9th Cir. 1969) ("[T]he existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."). "Given this, courts hold that the citizenship of a named, though unserved, defendant matters for diversity purposes." <u>Ake v. Cent. United Life Ins. Co.</u>, No. CIV-17-539-R, 2017 WL 3105875, at *3 (W.D. Okla. July 21, 2017). In fact, "[n]early every court" has found "an unserved defendant's citizenship count[s] for diversity purposes."[1] <u>Id.</u>

---

[1] <u>See, e.g.</u>, <u>Pecherski v. General Motors Corp.</u>, 636 F.2d 1156, 1160 (8th Cir. 1981) ("Despite the joined and served provision of section 1441(b), the prevailing view is that the mere failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal."); <u>Ott v. Consol. Freightways Corp. of Delaware</u>, 213 F. Supp. 2d 662, 664 (S.D. Miss. 2002) ("[T]he law is clear that the citizenship of all named defendants, whether served with process or not, must be considered in determining whether complete diversity exists, thereby providing a jurisdictional basis for removal under 28 U.S.C. § 1441(a)."); <u>In re Norplant Contraceptive</u>
(continued...)

FCIC maintains that Charvat's citizenship should be entirely disregarded because, at the time of removal, he had not been properly served. This argument overlooks the plain text of § 1441(b)(2), which requires that diversity of citizenship exist prior to removal. Because FCIC has provided no evidence that any party that destroys diversity is not a citizen of Oklahoma, it has not met its burden to demonstrate that the action was "otherwise removable" as required by § 1441(b)(2). Section 1441(b)(2) is designed to stop forum-defendants from removing to federal court when sued by diverse plaintiffs in defendant's home state court, not to allow quick removal by a non-forum defendant prior to effective service on a forum-defendant. The Court finds no evidence that supports the applicability of § 1441(b)(2). As a result, the Court holds that § 1441(b)(2) does not apply because FCIC has failed to show the civil action was "otherwise removable solely on the basis of [diversity] jurisdiction." 28 U.S.C. § 1441(b)(2).

## B. Fraudulent Joinder

FCIC removed this case to federal court on the basis of diversity jurisdiction. Dkt. # 2, at 1. In this case, the parties are not completely diverse because plaintiffs and defendant Charvat are citizens of Oklahoma. As noted above, FCIC does not dispute Charvat is a citizen of Oklahoma in its notice of removal or in its response to the motion to remand. However, FCIC argues that

---

[1] (...continued)
Products Liability Litigation, 889 F. Supp. 271, 274 (E.D. Tex. 1995) ("Section 1441(b) . . . did not change the removal requirement set forth in [Pullman Co. v. Jenkins, 305 U.S. 534 (1939)] that a court, in determining the propriety of removal based on diversity of citizenship, must consider all named defendants regardless of service."); Rushing v. Dan River, Inc., No. Civ. 1:00CV00395, 2000 WL 1456292, *2 (M.D.N.C. Sept. 6, 2000) ("[R]egardless of whether an unserved resident defendant may be ignored in determining removability under 28 U.S.C. § 1441(b), the citizenship of all named defendants, whether served with process or not, must be considered in determining whether complete diversity exists.").

plaintiffs improperly or fraudulently joined Charvat to defeat diversity jurisdiction. Dkt. # 2, at 3-8. Plaintiffs argue that they have stated a viable claim against Charvat for negligent procurement of their insurance contract under Oklahoma law and, as a result, the parties are not completely diverse. Dkt. # 16, at 6-9.

The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). If a defendant can show that all non-diverse defendants were fraudulently joined, the remaining parties will be completely diverse and the federal court has subject matter jurisdiction. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F. 2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "After resolving disputed questions of fact and ambiguities in favor of the plaintiffs, the court then determines whether they have 'any possibility of recovery

against the party whose joinder is questioned.'" Asbury v. N. Star Mut. Ins. Co., No. CIV-14-1331-HE, 2015 WL 588607, at *1 (W.D. Okla. Feb. 11, 2015) (quoting Montano v. Allstate Indem., 2000 WL 525592, at *1 (10th Cir. 2000); Hart, 199 F.3d at 246). "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006).[2] "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Id. Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882.

FCIC does not allege the plaintiffs have engaged in bad faith. FCIC instead argues that, under the second prong of the test for fraudulent joinder, plaintiffs have no possibility of recovery against the non-diverse defendant. Slover, 443 F. Supp. 2d at 1279. It follows that FCIC's argument depends entirely on whether this Court finds that an Oklahoma court would deny plaintiffs' negligent procurement claim against Charvat with "complete certainty." Smoot, 378 F.2d at 882.

Under Oklahoma law, "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Swickey v. Silvey Companies, 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on "specialized knowledge [about] the terms and conditions of insurance policies generally." Rotan v.

---

[2] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

Farmers Ins. Group of Cos., 83 P.3d 894, 895 (Okla. Civ. App. 2003) (citing Swickey, 979 P.2d at 269). "To discharge their duty to act in good faith and use reasonable care, skill, and diligence in the procurement of insurance, including use of their specialized knowledge about the terms and conditions of insurance policies, insurance agents <u>need only offer coverage mandated by law and coverage for needs that are disclosed by the insureds</u>, and this duty is not expanded by general requests for 'full coverage' or 'adequate protection.'" Id. (emphasis in original). If an agent is not provided with pertinent information, "the scope of the agent's duty to use reasonable care, skill, or diligence in the procurement of insurance does not extend" to create liability for unknown information. Rotan, 83 P.3d at 895. Oklahoma courts are in agreement that an insurance agent does "not have a duty to advise an insured with respect to his insurance needs." Id.; Mueggenborg v. Ellis, 55 P.3d 452, 453 (Okla. Civ. App. 2002). "What is required is that the agent 'offer coverage . . . for needs that are disclosed by the insured.'" Asbury v. N. Star Mut. Ins. Co., No. CIV-14-1331-HE, 2015 WL 588607, at *2 (W.D. Okla. Feb. 11, 2015) (quoting Rotan, 83 P.3d at 895).[3]

---

[3] While FCIC asserts that "[a]s a matter of law, an agent is not liable for the advisory duties ascribed to Mr. Charvat in [p]laintiffs' [p]etition" this Court finds that statement is over broad. Dkt. # 2, at 4. It is true that "general requests for 'full coverage' or 'adequate protection,'" will not create a duty to procure specific coverage (Rotan, 83 P.3d at 895); however, Oklahoma courts indicate that an agent's failure to procure <u>specifically requested coverage</u> constitutes a breach of the agent's duty. See, e.g., Cosper v. Farmers Ins. Co., 309 P.3d 147, 149 (Okla. Civ. App. 2013) (declining to extend Swickey to "impose a duty upon an insurer to provide an 'adequate amount' of coverage" where "[p]laintiffs did not allege that they requested a specific coverage limit and [d]efendants disregarded the request and issued a policy in some other amount" and where the agent played no part in setting a coverage limit) (emphasis added); Rotan, 83 P.3d at 895 (finding no liability to insured where the insureds "requested 'full coverage,' and the "coverage provided pa[id] the fair market value for a total loss of the insured vehicle," but did not provide enough coverage to account for plaintiffs <u>undisclosed</u> car loan, which was greater than the value of the car);
(continued...)

Given the above standard of care, the Court must evaluate whether, construing the facts in the light most favorable to the plaintiffs, an Oklahoma court would dismiss this claim for negligent procurement with complete certainty. In this case, plaintiffs requested "replacement coverage." Charvat represented he could procure "replacement coverage." Charvat insisted upon inspecting the property prior to procuring the coverage. He then proceeded to calculate the policy limits based on information from plaintiffs–and, presumably, based on his actual inspection of the property–using FCIC's specialized software. Under these facts, the Court cannot find an Oklahoma court would dismiss the cause of action against Charvat with complete certainty.

Several considerations bar the court from finding this claim would be dismissed with complete certainty. The most fundamental issue is that this case centers on an agent's involvement procuring "replacement coverage." Unlike requests for "full" or "adequate" coverage, a specific request for "replacement" coverage, could qualify as a "need[] . . . disclosed by the insureds" that would trigger an agent's duty to provide such coverage if promised. Rotan, 83 P.3d at 895. The term "replacement coverage" is a term that connotes a specific type of coverage. The term is unlike "full coverage," which could be interpreted to mean the replacement value of the property insured,

---

3   (...continued)
Mueggenborg, 55 P.3d at 454 (finding that a request for "adequate protection" did not trigger any particular duty on behalf of the agent where "[p]urchasers of insurance usually do seek 'adequate protection' . . . 'To permit a conversation such as this to serve as the basis for an issue of fact leading to a finding of an expanded principal-agent relationship would in substance make the agent a blanket insurer for his principal'") (emphasis added). Similar assessments of an agent's knowledge and involvement were made when considering agent liability in a federal district court decision applying Oklahoma law. See Hernandez v. Liberty Ins. Corp., 73 F. Supp. 3d 1332, 1337 (W.D. Okla. 2014) (noting that the agent could not be liable for procuring specific coverage where he "did not determine the amount of coverage and did not calculate the replacement cost value of Plaintiff's dwelling or personal property at any time").

the value of the insureds' property at the time of loss, or some other amount (id.); and it is nothing like "adequate" coverage, which is essentially a meaningless request (Cosper, 309 P.3d at 149). Plaintiffs' request for "replacement coverage," which is arguably a specific request, distinguishes this case from Rotan and Cosper.

The case is further distinguished by Charvat's role in calculating the appropriate coverage amount. In this case, Charvat inspected the property and conditioned the insurance on the results of that inspection. Further, Charvat likely knew what considerations went into the FCIC software used to calculate coverage. Because he both inspected the property, and knew what the important considerations were for FCIC, his insight as to the calculation of "replacement coverage" was unmatched. Plaintiffs are likely not construction experts, and they are even less likely to be experts in FCIC valuation software. Charvat was presumably at least proficient in both of those areas. According to the complaint, he represented plaintiffs would receive replacement coverage, and he used his expertise to determine that replacement coverage amount. The Court finds that such facts do not present an easy case under current Oklahoma law and as a result, finds that there is a possibility of liability for Charvat.[4]

---

[4] Other states have found similar involvement by the agent expands his duty to the insured. See, e.g., Zaremba Equip., Inc. v. Harco Nat. Ins. Co., 837 N.W.2d 686, 695 (Mich. Ct. App. 2013) (finding that where an insured requested replacement coverage, and the insurance agent valued the property and assured the insured that he procured replacement coverage, the agent was acting as an expert and had a duty to provide replacement coverage, as represented, to the insured); Desai v. Farmers Ins. Exch., 55 Cal. Rptr. 2d 276, 281 (Cal. Ct. App.1996) (holding "[a] broker's failure to obtain the type of insurance requested by an insured[, here, replacement coverage,] may constitute actionable negligence and the proximate cause of injury"); see also Tornado Techs., Inc. v. Quality Control Inspection, Inc., 977 N.E.2d 122, 125 (Ohio Ct. App. 2012) (noting "an insurance agent owes no duty to seek replacement coverage for an insured in the absence of a request by the insured to do so") (emphasis added).

Because the Court finds the claims against Charvat do not fail as a matter of law, the elements of fraudulent joinder have not been satisfied by the facts alleged. As a result, the Court finds that Charvat's citizenship should not be disregarded. Because plaintiffs and a properly joined defendant are not completely diverse, the requirements for diversity jurisdiction were not met at the time this case was removed to federal court. Accordingly, the Court finds that it lacks subject matter jurisdiction over this case, and the case must be remanded to state court.

### C.

Plaintiffs also request this Court award them fees and costs, arguing that FCIC's removal was "wrong as a matter of law." Dkt. # 16, at 11. "In deciding whether to award costs under § 1447(c), the key factor is the propriety of defendant's removal. The district court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c)." Martin v. Franklin Capital Corp., 393 F.3d 1143, 1146 (10th Cir. 2004), aff'd, 546 U.S. 132 (2005) (citations omitted). Under 28 U.S.C. § 1447(c), "if a defendant's removal could be fairly supported by the law at the time, even if later deemed incorrect, a district court's discretionary decision not to award fees is appropriate." Id. Here, the Court does not find that FCIC's arguments as to fraudulent joinder were unfounded. While there is a general duty that the insurance agent has to insureds, that duty has been refined in subsequent years. Although this Court finds that it far from certain that the claims against the agent will be dismissed as a matter of law, there is non-precedential case law that indicates, at least in the context of auto-insurance, such negligent procurement claims against agents are difficult to state. Country Gold, Inc. v. State Auto Prop. & Cas. Ins. Co., No. CIV-14-1398-D, 2015 WL 431638, at *5 (W.D. Okla. Feb. 2, 2015). The Court denies plaintiffs' request for fees and costs.

**IT IS THEREFORE ORDERED** that the Court lacks subject matter jurisdiction over this case, and the motion to remand (Dkt. # 16) is **granted**. The Court Clerk is directed to **remand** this case, including the pending motions to dismiss (Dkt. ## 13, 22), to Tulsa County District Court.

**IT IS FURTHER ORDERED** that plaintiffs' request for fees and costs is **denied.**

**DATED** this 16th day of November, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE